[S. F. No. 13426. In Bank.—May 28, 1931.]

GRACE GILLANDERS et al., Respondents, v. MANUEL DA SILVA et al., Defendants; ZURICH GENERAL ACCIDENT & LIABILITY INSURANCE COMPANY, LTD. (a Corporation), Appellant.

J. Hampton Hoge and A. Dal Thomson for Appellant.

Wesley W. Kergan and Alfred B. Weiler for Respondents.

THE COURT.—This is an appeal from an order made after judgment pursuant to section 663 of the Code of Civil Procedure and from the judgment which followed that order. The plaintiffs are husband and wife.

A rehearing was granted in order that further consideration might be given to the contention of the defendant insurance company that the fact-finding power of the court on appeal under section 4¾ of article VI of the Constitution and section 956a of the Code of Civil Procedure may not be exercised in aid of a judgment entered pursuant to section 663 of the Code of Civil Procedure. Upon reexamination of the record we deem it unnecessary to pass upon that point for the reason that the appeal may properly be decided on the findings as made by the trial court.

The action is one to reform a liability indemnity insurance policy issued by the defendant insurance company and to recover on said policy when so reformed.

On March 11, 1924, and while said policy was in effect, the plaintiff Grace Gillanders was struck and injured by

an automobile operated as a jitney bus by the defendant da Silva in the city of Oakland. In a prior action said plaintiff recovered a judgment against da Silva in the sum of $5,116.30 and costs. That judgment being unpaid, this action was commenced. The defense of the insurance company was and is that the policy issued by it did not cover the automobile operated by da Silva at the time of the accident.

It appears from the findings of the court that on April 6, 1915, the commissioners of the city of Oakland passed an ordinance providing for the regulation of the business of operating automobiles for hire within the city. This ordinance was amended on January 13, 1916, is commonly called the jitney bus ordinance and the same was in effect at all times involved in this controversy. Section 3 provides that before operating any automobiles for hire in said city the owner or lessee thereof should apply for and obtain annually a license so to do from the city council, and the operator of such automobile should obtain a permit as therein provided; that the applicant for the license should state under oath (a) the route proposed to be followed; (b) the price to be charged; (c) the schedule to be observed; (d) the transfer points; (e) the type of motor vehicle and the name of the manufacturer or the popular name thereof; (f) the horsepower, factory number and state license number; (g) the seating capacity of the motor vehicle; and (h) the name, age, residence and business address of the applicant. Said section further provides that the license after investigation should be granted unless it should appear (a) that the bond or insurance policy elsewhere required by the ordinance had not been furnished and approved "or the same is insufficient in form or substance to properly safeguard the public interest and safety", and (b) that the applicant has not complied with all of the terms and conditions of the ordinance. Section 8 provides that a license once issued might be transferred to another qualified person upon application to and approval by the chief of police.

Section 18 of the ordinance provides that in order to insure the safety of the public it shall be unlawful for any person to operate an automobile for hire or to obtain a license therefor unless he shall obtain and keep on file in the office of the city clerk either (a) a bond, or (b) a policy of insurance in an authorized company insuring the owner

or lessee of said automobile against any loss or damage that may result to any person from the operation of the automobile, said policy to be in limits of $5,000 for each person injured, etc. The ordinance contains the usual penal clause.

It further appears from the findings that on February 13, 1924, the defendant da Silva applied in writing to the city of Oakland for permission to acquire the license to drive a jitney bus on Seventh Street then owned by one Piladi Guidotti. In his application da Silva stated that he would drive on said route a Haynes automobile, factory No. 26182. Guidotti consented to the transfer and prior to March 11, 1924, the license was issued to da Silva to drive said Haynes automobile for hire pursuant to the terms of said ordinance. On March 1, 1924, the defendant insurance company issued its policy No. 1,528,212, by the terms of which it agreed to indemnify da Silva against loss from the liability imposed by law upon him for damages as a result of the ownership, maintenance and use of a 1919 Oldsmobile touring automobile No. 2122, while driving said automobile as a jitney bus in the city of Oakland on the Seventh Street route and to pay any final judgment rendered against him arising out of such ownership, maintenance and use. The court further found that said policy was issued in accordance with the provision of said jitney bus ordinance; that during the months of February and March, 1924, the firm of Spengler and Fraser were insurance brokers in said city and during that time placed with insurance companies the applications for insurance on behalf of jitney bus drivers on the Seventh Street route, including the application of da Silva for his insurance; that during the same period of time the defendant insurance company had agreed to write all of the insurance policies covering jitney busses on the Seventh Street route for the purpose of complying with the jitney bus ordinances of the city of Oakland; that the policy of March 1st above described was one of sixteen jitney bus policies written by the defendant insurance company pursuant to said agreement; that Spengler and Fraser were not the agents of the defendant insurance company; "that said Spengler and Fraser in so applying for and said defendant insurance company in issuing said insurance policies did so to comply

with the terms of said ordinances'', and that said policy was by its terms in full force and effect for one year from the date of its issuance.

On the foregoing and other findings not material to this discussion the court at first concluded that the plaintiffs take nothing and that the defendant insurance company have judgment for its costs. Judgment was entered accordingly. Thereafter, as authorized by section 663 of the Code of Civil Procedure, the plaintiffs moved to vacate and set aside the judgment and to enter a judgment in their favor on the ground that the findings of fact did not support the conclusions of law or the judgment. This motion was granted and judgment was thereupon entered reforming the insurance policy issued on March 1, 1924, so as to describe the 1917 Haynes automobile in the place and stead of the Oldsmobile and further adjudging that the plaintiffs recover the sum of $5,000 against the defendant insurance company with interest at the rate of seven per cent per annum from January 30, 1925 (the date of the entry of the prior judgment in the personal injury action), ''said principal and interest amounting to the sum of $6,341, and interest upon said sum of $6,341 from the date hereof'' until paid, with costs. The defendant insurance company has appealed from the order and from the judgment.

The controlling question presented is whether the second judgment is supported by the findings. Manifestly the theory of the trial court in rendering the second judgment was that all parties concerned in the transaction intended to comply with the jitney bus ordinances of the city of Oakland enacted in the public interest; that this purpose could not lawfully be accomplished unless the person licensed to drive an automobile for hire was protected by the required insurance for the benefit of persons who might suffer injury by reason of the operation of the vehicle; that a mutual mistake occurred on the part of the insurer and the insured in misdescribing the vehicle covered and that the plaintiff as a party aggrieved was entitled to a reformation of the contract of insurance in order that the intention of all parties be given effect as contemplated by section 3399 of the Civil Code. The allegations of the complaint are broad enough and the findings are sufficient upon which to base a conclusion that such mutual mistake existed to justify the entry of the judgment appealed from.

We are not impressed by the argument that the misdescription of the type of the car under the circumstances of this case would prevent a reformation of the contract of insurance so as to effectuate the intention of the parties thereto. On petition for rehearing the defendant insurance company cites the case of *Downs* v. *Georgia Casualty,* 271 Fed. 310. In that case the owner of a Ford car applied to the municipal authorities of the city of Trenton, N. J., for a license to operate the Ford as a jitney bus pursuant to a statute of that state similar in purpose to the ordinance of the city of Oakland. The license was issued to cover the operations of that car only, and the required insurance policy was obtained from the defendant in the case. The driver subsequently acquired a Packard automobile and while operating the same for hire injured the plaintiff, who recovered judgment against the driver. In the subsequent suit against the insurance company it was disclosed that no license had been issued to operate the Packard as an automobile for hire and that no insurance was outstanding on the Packard car at the date of the accident. There was no pretense that the parties to the contract of insurance intended in fact to cover the operations of the Packard car and no reformation of the contract was sought. The action was an action at law in the federal court. The only justification for the lawsuit appears to have been the fact that the agent of the insurer indorsed upon the policy a transfer of the insurance from the Ford to the Packard car after the injury which formed the basis of the plaintiff's cause of action had taken place. It appeared that the agent of the insurer had no authority to make the transfer and further that both the insurer and its agent were without knowledge of the accident at the time the transfer was made. The case is therefore not in point on the facts.

In the present case the defendant da Silva owned only the Haynes car. He named that car in his application for a license and the license was issued to operate that car. A compliance with the law required the issuance of an insurance policy on that car. The defendant insurance company issued its policy intending to co-operate with da Silva in the requirements of the law, but by mistake issued a policy on a car not shown to be owned or operated by da Silva or licensed as a jitney bus and received the premium therefor. Under these circumstances we conclude that the

trial court was justified in reforming the contract so as to express the intention of all parties to the transaction and then rendering judgment thereon.

The insurance company makes the further point that the form of the judgment results in a compounding of interest on the original judgment in favor of the plaintiff. This contention is well taken. The interest on the original judgment was computed at the legal rate from its entry on January 30, 1925, to the date of the judgment in the present action. The sum of the principal and interest was $6,341, and judgment herein was rendered for that sum with interest thereon until payment or satisfaction of the judgment. Obviously this was an allowance of interest on interest for which there appears to be no authority in law in such a case.

The judgment is modified by striking from the third paragraph thereof the following language: "Said principal and interest amounting to the sum of $6,341, and interest upon said sum of $6,341 from the date hereof."

The order is affirmed and as above modified the judgment is affirmed.

Rehearing denied.